# IN THE SUPREME COURT OF IOWA

No. 10–1278

Filed June 1, 2012

**FLYNN BUILDERS, L.C.,**

Appellee,

vs.

**MATTHEW P. LANDE**
and **CHRIS LANDE,**

Appellants.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Boone County, William C. Ostlund, Judge.

On further review, appellants allege the district court and court of appeals erred in holding the appellee was entitled to enforce its mechanic's lien. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED, AND CASE REMANDED FOR FURTHER PROCEEDINGS.**

Duane M. Huffer and Robert L. Huffer of Huffer Law P.L.C., Story City, for appellants.

Meredith C. Mahoney Nerem and John D. Jordan of Jordan & Mahoney Law Firm, P.C., Boone, for appellee.

**APPEL, Justice.**

In this action to foreclose a mechanic's lien, we address the consequences of a contractor's failure to render full and complete performance.[1] An owner and contractor entered into an agreement for the construction of a new home. During construction, the owner refused to pay the contractor after discovering markups on the cost of materials. In response, the contractor halted construction and filed an action to enforce a mechanic's lien. The contractor subsequently filed a petition to foreclose the mechanic's lien. Although the contractor did not complete construction, the district court found the contractor rendered substantial performance under the contract and entered a judgment against the owner. The court of appeals affirmed, and we granted further review. For the reasons expressed below, we affirm in part and vacate in part the decision of the court of appeals, reverse the judgment of the district court, and remand the case for further proceedings.

## I. Factual and Procedural Background.

This case involves a dispute between Gregg Flynn (Flynn) and Matthew and Chris Lande. In early 2009, the Landes were seeking a builder to construct a new home. Flynn, the owner of Flynn Builders, L.C., submitted to the Landes a bid to construct the home for $259,576. The bid included a line item for a "materials package" in the amount of $61,223.77. The Landes accepted the bid, and Flynn began construction in May 2009.

---

[1]The defendants raise six separate issues in their application for further review. In the exercise of our discretion, we choose to only address the issue related to substantial performance of the construction contract. As to the other issues raised on appeal, the court of appeals' opinion will stand as the final decision in this appeal. *See State v. Rodriguez*, 807 N.W.2d 35, 37 (Iowa 2011).

Construction continued until early July when the Landes discovered the materials package included a $20,000 markup that Flynn did not disclose.[2] Though the markup did not increase the agreed upon price, the Landes' lender and the Landes refused to pay the markup. Because the Landes and their lender refused to continue making payments, Flynn stopped construction on the project and filed a mechanic's lien for $28,307.50 in the district court.

In August 2009, Flynn filed a petition to enforce the mechanic's lien. In their answer, the Landes denied the existence of a contract and made no counterclaim. The matter proceeded to trial in May 2010.

During trial, Flynn testified that his duties as a general contractor were nearly completed when he left the project. He explained that, while the plumbing, drywall, paint, carpet, floor coverings, and trim remained unfinished, arrangements had been made with various subcontractors to complete the work. According to Flynn, "Everything was ready to go. . . . [A]ll Matt [Landes] had to do is contact the individual sub[contractors], even after I walked off, to have them come complete their jobs." Brian Stolte, an employee of Flynn, testified Flynn completed between eighty and eighty-five percent of the project, possibly more, before leaving. Stolte stated the insulation, drywall, trim, and flooring remained unfinished when Flynn left. The unfinished trim, which would have taken two weeks to complete, included the installation of cabinets, doors, and windows. Stolte further stated that a day of work remained with the heating and air conditioning and the concrete was not poured in the front of the garage. Stolte estimated that it would have taken a total of five to seven weeks to complete the four-to-five month project.

---

[2]A markup is defined as "[a]n amount added to an item's cost to determine its selling price." *Black's Law Dictionary* 1059 (9th ed. 2009).

According to Matt Lande, "[t]he whole house was pretty much studs" when Flynn stopped working on the project. He stated the basement doors and garage doors were not installed and that the siding was only partially completed. Lande also testified that he, not Flynn, was in fact the general contractor on the project. Lande explained he understood the agreement to be that Flynn would frame, side, and shingle the house, and both Flynn and Lande would recruit subcontractors to build the house.

Following trial, the district court held, *inter alia,* Flynn was entitled to enforce the mechanic's lien because Flynn substantially performed the contract. The court concluded Flynn was a general contractor of the project and that the general contracting markup fee of $20,000 was "appropriate and in accordance with standards of the industry." The court stated that Matt Lande acted in large part as a general contractor during construction. Addressing the substantial performance issue, the court found that Flynn's completion of eighty percent of the project amounted to substantial performance of the contract. The court stated "the credibility of the parties was given substantial weight in reaching [the court's] ultimate conclusion." The court entered a judgment in the amount of $16,574.75, plus interest, against the Landes. The Landes appealed.

On appeal, the Landes argued the district court erred in finding Flynn substantially performed. The Landes noted the home was only eighty to eighty-five percent complete when Flynn stopped working on the project. The Landes observed a number of items remained unfinished on the project, including installing insulation, drywall, flooring, and trim. The Landes also asserted Flynn breached the contract

by walking off the job before completing the project. The court of appeals affirmed.

The court of appeals reasoned that Flynn substantially performed the contract because the home was "framed, enclosed, roofed, sided (with a minor exception), and the electrical and plumbing were roughed-in." The court explained evidence in the record established the home was seventy to ninety-five percent complete when Flynn left the project. The court further noted the record was devoid of any indication of bad faith on the part of Flynn or that the unfinished portion of the home impaired the structure as a whole. The Landes filed an application for further review, which we granted.

**II. Standard of Review.**

Actions to enforce mechanic's liens are in equity. *Carson v. Roediger*, 513 N.W.2d 713, 715 (Iowa 1994). Our review is therefore de novo. *Id.* In our de novo review, the district court's fact findings are given weight, but we are not bound by them. *Id.* This court has stated in mechanic's lien cases, "involving as they do numerous charges and counter charges which depend entirely on the credibility of the parties, we have frequently held the trial court is in a more advantageous position than we to put credence where it belongs." *McDonald v. Welch*, 176 N.W.2d 846, 849 (Iowa 1970).

**III. Discussion.**

**A. Law Related to Mechanic's Liens and Substantial Performance.** Mechanic's liens were not recognized at common law and are purely a creature of statute. *See Clemens Graf Droste Zu Vischering v. Kading*, 368 N.W.2d 702, 708 (Iowa 1985); Roger W. Stone, *Mechanic's Liens in Iowa*, 30 Drake L. Rev. 39, 41 (1980) [hereinafter Stone]. Mechanic's lien statutes are designed to protect "persons who have

supplied labor or material for the construction, improvement, or repair of a building or other structure by giving the lienholders security independent of their contractual remedies against the owner of the property, if any." Stone, 30 Drake L. Rev. at 42. Although mechanic's lien statutes are in derogation of the common law, they are liberally construed " 'with a view to promote its objects and assist the parties in obtaining justice.' " *Gollehon, Schemmer & Assocs., Inc. v. Fairway-Bettendorf Assocs.*, 268 N.W.2d 200, 201 (Iowa 1978) (citation omitted).

The Iowa territorial government enacted the first mechanic's lien statute in Iowa in 1838. The Statute Laws of the Territory of Iowa 349 (1839); Stone, 30 Drake L. Rev. at 41. Though the statute has undergone a series of amendments since its adoption, Stone, 30 Drake L. Rev. at 41–42, Iowa caselaw has developed a requirement that in order to enforce a mechanic's lien, the work must be substantially performed by the contractor, *Keys v. Garben*, 149 Iowa 394, 395, 128 N.W. 337, 337 (1910); *see also S. Hanson Lumber Co. v. De Moss*, 253 Iowa 204, 208, 111 N.W.2d 681, 684 (1961); *Farrington v. Freeman*, 251 Iowa 18, 23, 99 N.W.2d 388, 391 (1959); *Peterman v. Hardenbergh*, 250 Iowa 931, 933, 97 N.W.2d 152, 154 (1959); *S.D. & D.L. Cota Plastering Co. v. Moore*, 247 Iowa 972, 978, 77 N.W.2d 475, 478 (1956); *Huffman v. Hill*, 245 Iowa 935, 938, 65 N.W.2d 205, 206 (1954). The more recent applications of the substantial performance doctrine in Iowa appear in published decisions of the Iowa Court of Appeals. *See, e.g.*, *Nepstad Custom Homes Co. v. Krull*, 527 N.W.2d 402, 406 (Iowa Ct. App. 1994); *Moore's Builder & Contractor, Inc. v. Hoffman*, 409 N.W.2d 191, 194 (Iowa Ct. App. 1987). Our caselaw in this regard is consistent with the law in a significant number of states. *See* 53 Am. Jur. 2d *Mechanic's Liens* § 49, at 133–34 (2006).

In *Huffman*, the court explained that "a technical, exact and perfect performance is not necessary" in an action to foreclose a mechanic's lien. *Huffman*, 245 Iowa at 938, 65 N.W.2d at 206. So long as the builder substantially performs the contract, the builder "is entitled to the contract price less reasonable damages on account of slight defects in performance." *Id.* This court elaborated on the substantial performance doctrine in *Farrington*, stating,

> " 'Substantial performance,' as defined by the cases, permits only such omissions or deviations from the contract as are inadvertent or unintentional, are not due to bad faith, do not impair the structure as a whole, are remediable without doing material damage to other parts of the building in tearing down and reconstructing, and may without injustice be compensated for by deductions from the contract price. So much is allowed in building contracts because of the hardship to the contractor if slight, unintentional deviations should bar his recovery."

*Farrington*, 251 Iowa at 24, 99 N.W.2d at 391 (quoting *Littell v. Webster Cnty.*, 152 Iowa 206, 215, 131 N.W. 691, 694 (1911)).

The concept of substantial performance in the mechanic's lien context is derived from contract law. In *Farrington*, for example, the court's definition of substantial performance was taken directly from a breach of contract case. *See Farrington*, 251 Iowa at 24, 99 N.W.2d at 391; *Littell*, 152 Iowa at 215, 131 N.W. at 694. In the area of contracts, "[s]ubstantial performance is performance without a material breach, and a material breach results in performance that is not substantial." II E. Allan Farnsworth, *Farnsworth on Contracts* § 8.16, at 518 (3d ed. 2004); *see also* 5 Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor Construction Law* § 18:12, at 892–93 (2002) ("Substantial performance means the contractor has completed its work to such an extent that it cannot be said to have materially breached the contract."); Richard A. Lord, *Williston on Contracts* § 44:55, at 232–33 (4th ed. 2000)

("A breach of a contract is not material if substantial performance has been rendered.").

**B. Application of Law to Facts.** With these principles in mind, we now turn to the facts in this case. In our de novo review, we conclude Flynn did not substantially perform the contract. We note that more than simply punch-list items remained to be completed when Flynn left the project. *See Cont'l Ill. Nat'l Bank & Trust Co. v. United States*, 101 F. Supp. 755, 758 (Ct. Cl. 1952) (holding unfinished punch-list items did not amount to material breach); *Pettit v. Hampton & Beech, Inc.*, 922 A.2d 300, 305 (Conn. App. Ct. 2007) (substantial performance even though punch-list items totaling $5000 unfinished). Flynn himself testified that, although he made arrangements with subcontractors to complete the house, the plumbing, drywall, paint, carpet, floor coverings, and trim remained unfinished. According to Stolte, Flynn's own witness, the unfinished trim included the installation of cabinets, doors, and windows. Stolte also stated the heating and air conditioning was not complete and the concrete had not been poured in front of the garage. Stolte estimated it would take an additional five to seven weeks to complete the project. All told, Stolte believed Flynn completed only eighty to eighty-five percent of the project when the contract was terminated. *See Carefree Bldg. Prods., Inc. v. Belina*, 564 N.Y.S.2d 852, 854 (App. Div. 1991) (holding, as a matter of law, contractor failed to substantially perform when deficiencies represented twenty-five percent of contract price); *Jerry B. Wilson Roofing & Painting, Inc. v. Jobco-E.R. Kelly Assocs., Inc.*, 513 N.Y.S.2d 263, 265 (App. Div. 1987) (fifteen percent); *Fuchs v. Saladino*, 118 N.Y.S. 172, 176 (App. Div. 1909) (fifteen percent). While "[n]o mathematical rule relating to the percentage of the price, of cost of completion or of completeness can be laid down to

determine substantial performance of a building contract," *Plante v. Jacobs*, 103 N.W.2d 296, 298 (Wis. 1960), the work left unfinished in this case was much more than a technical or inadvertent omission; rather, the omissions materially affected the habitability of the house. *See Nelson v. Hazel*, 406 P.2d 138, 144 (Idaho 1965) ("The mere fact that a shell was constructed containing the rooms outlined in the contract, does not in itself mean that the contract was substantially performed.").

We acknowledge the record demonstrates Matt Lande agreed to perform some tasks that are ordinarily the responsibility of a general contractor. But the owner's willingness to take on additional responsibilities does not absolve the builder's responsibility to substantially perform the work the builder agreed to perform. While Matt Lande had the ability to contact Flynn's subcontractors to complete the work, the responsibility to complete the project was Flynn's in his capacity as general contractor. As observed by the Wisconsin Supreme Court,

> the owner has a right to contract for the completed structure or work and in the building of a house the contract price pays for the relief from trouble and personal effort on the part of the owner in respect to building.

*Kreyer v. Driscoll*, 159 N.W.2d 680, 681–82 (Wis. 1968) (holding $50,000 contract for building of house not substantially performed when $4650 remained); *see also Harris v. Desisto*, 932 S.W.2d 435 (Mo. Ct. App. 1996) (stating the general contractor "cannot argue that he had substantially performed under the agreement when it is obvious that [the developer] had performed in his stead and that [l]ogically, under a claim of substantial performance, [the general contractor] cannot claim the benefits of the [developers'] efforts precipitated by [the general contractor's] breach as a basis for avoiding the effect of the breach");

*Local Union No. 964, United Bros. of Carpenters & Joiners of Am. v. Lighting Servs., Inc.*, 557 N.Y.S.2d 764, 765 (App. Div. 1990) (holding that, although certificate of occupancy had been delivered, evidence in the record established work that should have been done by the contractor was performed by others).

**C. Disposition.** Having determined Flynn did not substantially perform the contract, we recognize that there may be additional legal and factual issues that were not reached by the district court that could have an impact on the disposition of this case. The district court did not address, for instance, the factual disputes in the record for the reason Flynn walked off the job and whether lack of specific performance might be excused by the conduct of the Landes. *See Horsfield Constr., Inc. v. Dubuque Cnty.*, 653 N.W.2d 563, 573 (Iowa 2002) (stating that anticipatory repudiation "excuses performance on the part of the non-breaching party"). The district court also did not address the significance, if any, of the hidden nature of the markup on the ability of Flynn to enforce a mechanic's lien. We intimate no view on these questions, but remand the case on the current record for further proceedings. *See, e.g., Lewis Elec. Co. v. Miller*, 791 N.W.2d 691, 694–96 (Iowa 2010) (reversing based on lack of evidence of substantial performance and remanding for new findings "on the basis of the current record"); *Sauder v. Union Produce Coop.*, 592 N.W.2d 695, 698 (Iowa 1999) (remanded for findings on an issue the district court did not consider "on the existing record").

**IV. Conclusion.**

For the reasons discussed above, we hold that the trial court erred in concluding that Flynn had substantially completed work for the Landes. On this issue, we vacate the opinion of the court of appeals,

reverse the judgment of the district court, and remand the case for further proceedings. The opinion of the court of appeals is affirmed as to all other issues raised in this appeal.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED, AND CASE REMANDED FOR FURTHER PROCEEDINGS.**