## IN THE COURT OF APPEALS OF IOWA

No. 14-0237
Filed October 29, 2014

**BRIAN HALSTEAD,**
        Plaintiff-Appellant,

**vs.**

**WAYNE A. LANGEL, CATHY M.
LANGEL, and FIRST STATE BANK,**
        Defendants-Appellees.

_____

        Appeal from the Iowa District Court for Fayette County, Kellyann M. Lekar,

Judge.


        A contractor appeals the district court decision denying his petition

seeking a money judgment and enforcement of his mechanic's lien, and granting

the defendants' counterclaim for damages.  **AFFIRMED IN PART, REVERSED

IN PART, AND REMANDED**.


        James S. Updegraff, West Union, for appellant.

        Patrick Dillon, Sumner, and David James Hanson of Hofmeyer & Hanson,

P.C., Fayette, for appellees.


        Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**MULLINS, J.**

A contractor appeals the district court decision denying his petition seeking a money judgment and enforcement of his mechanic's lien, and granting the defendants' counterclaim for damages. We agree with the district court's determination the contractor cannot enforce his mechanic's lien because he did not show substantial performance of the contract. We conclude, however, the contractor should be paid for the work he performed on the project and for which he had not been paid, as adjusted by the cost of remedying defective work. We affirm the denial of the mechanic's lien, reverse the decision of the district court on damages, and remand for a further hearing on the amount of damages.

### I.       Background Facts & Proceedings

Wayne and Cathy Langel own a building in Fayette, Iowa. Cathy developed plans to operate a prom and bridal shop business there. She was approved for a grant of $100,000 from Upper Iowa University in Fayette to make improvements to the property and to help start the business. A condition of obtaining the grant funding was that Cathy improve the appearance of the building.

On July 20, 2012, Cathy entered into a written contract with Brian Halstead to perform work to improve the appearance of the outside of the building for a cost of between $15,000 to $20,000, depending upon the costs of materials and hours needed to complete the work. The written contract did not contain any provision concerning when the work needed to be completed. Cathy stated Halstead orally agreed the work would be completed by Upper Iowa

University's Homecoming Week, September 23 to 29, 2012; but Halstead denied this was a provision of the contract. Halstead had a full-time job performing tuck-point brick repair on older buildings for Technical Specialty Systems. He also performed independent projects, such as his job for Cathy, and she was aware he would be working on her project in his spare time.

Halstead began working on the project after the contract was signed. The work primarily involved tuck-pointing the existing brick façade of the building. Cathy paid Halstead $5000 near the beginning of the project. On September 22, 2012, Cathy discharged Halstead because she believed the project was not being completed in a timely manner and she had concerns about the quality of Halstead's work. The parties agree the work was not completed at that time.

Cathy contacted Thomas Pattison to work on the project. Pattison mainly engaged in new construction, but had employees that could do tuck-pointing. He had some of his employees work on the exterior of the building for about two and one-half days in September 2012, and charged Cathy $1968.49 for the work. Pattison submitted an estimate that it would cost an additional $8950 "to complete and fix problems." Cathy did not have this additional work performed.

On September 28, 2012, Halstead submitted a bill to Cathy for $10,000, representing labor and materials for the project for which he had not been paid. He submitted an exhibit showing his time and materials for the project had actually been $16,245, for which he had already been paid $5000, leaving a balance of $11,245; but he decided to bill Cathy for only $10,000 of the

remainder. In October 2012, Upper Iowa University released the grant payment of $100,000 to Cathy.

On December 28, 2012, Halstead filed a mechanic's lien, pursuant to Iowa Code chapter 572 (2011). Halstead filed a petition on March 12, 2013, seeking to enforce the mechanic's lien on the property because he had not been paid the $10,000 he believed was due for his work on the project. The Langels filed a counterclaim asserting Halstead should be required to pay $8950 for the cost of repairing his work.

The district court entered a decision on January 15, 2014. The court determined Halstead had not substantially completed the project, and therefore, could not enforce his mechanic's lien. In particular, the court found Halstead failed to perform material portions of the contract by not completing it by September 23, 2012. On the counterclaim, the court determined Halstead had not completed the work in a good, workmanlike manner and should be responsible to pay defendants the amount of $8950. Halstead appeals the decision of the district court.

## II. Standard of Review

An action to enforce a mechanic's lien is heard in equity and we review the district court's decision de novo. *Flynn Builders, L.C. v. Lande*, 814 N.W.2d 542, 545 (Iowa 2012). We give weight to the district court's findings of fact, but are not bound by them. *Id.* In cases involving a mechanic's lien, "involving as they do numerous charges and counter charges which depend entirely on the

credibility of the parties, we have frequently held the trial court is in a more advantageous position than we to put credence where it belongs." *Id.*

### III. Mechanic's Lien

In general, in order to enforce a mechanic's lien a contractor must show substantial performance of the contract. *Id.* at 546. Substantial performance means there are only omissions or deviations from a contract that are inadvertent or unintentional, not the result of bad faith; do not impair the structure as a whole; are remedial without doing substantial damage to the other portions of the building; and may be compensated through deductions in the contract price. *Id.* In an action to foreclose a mechanic's lien, "a technical, exact and perfect performance is not necessary." *Id.*

There is an exception to the requirement for substantial performance if the contractor's inability to complete the project is due to obstruction, hindrance, or delay by the homeowner. *Sheer Constr., Inc. v. W. Hodgman & Sons, Inc.*, 326 N.W.2d 328, 332 (Iowa 1982). "[T]he rule is well-settled that one party to a contract may not hamper the efforts of the other in performance according to its terms." *Hardin v. Eska Co.*, 127 N.W.2d 595, 598 (Iowa 1964). "[I]f one party to a contract prevents the other from performing a condition or fails to cooperate to allow the condition to be satisfied, the other party is excused from showing compliance with the condition." *Employee Benefits Plus, Inc. v. Des Moines Gen. Hosp.*, 535 N.W.2d 149, 155 (Iowa Ct. App. 1995).

Halstead contends his failure to complete the project was due to the fact he was discharged by Cathy on September 22, 2012. Halstead disputes the

assertion he had agreed to complete the project by homecoming for Upper Iowa University, which was during the week of September 23 to 29, 2012. He stated he told Cathy he could have the job done by the end of the season, which depended upon the weather and temperature. Halstead testified, "If there would have been any pressure on the time figure, I probably would not have done this job, because this was my part-time job." On the other hand, Cathy testified that having the work completed by homecoming was a condition of the contract, and Halstead told her he could get the job done within that timeframe. Wayne testified, "he said that he could get it done by the end of the season. But our deadline was to get the east and south side had to be done by homecoming, is what we went for." Wayne stated Halstead was informed of this requirement, and he did not object.

As noted above, the written contract did not contain any provision concerning when the work needed to be completed. Cathy relies upon a purported oral agreement to modify the terms of the written contract to include a deadline for completing the work. Generally, "[t]he parole evidence rule forbids use of extrinsic evidence to vary, add to, or subtract from a written agreement." *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 107 (Iowa 2012).

The case of *I.G.L. Racquet Club v. Midstates Builders, Inc.*, 323 N.W.2d 214, 215 (Iowa 1982), involved a similar situation where the parties entered into a written contract that had no provision for a completion date. The building owner contended the contractor had entered into an oral agreement to complete the job by a specific date, and he had been damaged by a delay in completion.

*I.G.L. Racquet Club*, 323 N.W.2d at 215. On appeal, the Iowa Supreme Court stated, "The [parole evidence] rule should not have been employed here to preclude plaintiff from attempting to show the writing was induced in part by an agreement about a completion date." *Id.* at 216; *see also First Interstate Equip. Leasing of Iowa, Inc. v. Fielder*, 449 N.W.2d 100, 103 (Iowa Ct. App. 1989) ("The rule should not be employed to preclude a party from attempting to show the writing was induced in part by an oral agreement.").

The court found the oral agreement to complete the work by homecoming "can reasonably be considered an inducement for the execution of the contract and is thus admissible." On our de novo review, we concur in the district court's conclusion, "an important term of the contract included that the completion date must be before September 23, 2012." We note Cathy's belief she needed to have the project completed in order to receive the grant money from Upper Iowa University.[1] We also recognize the district court was in a more advantageous position to determine the credibility of the parties. *See Nepstad Custom Homes Co. v. Krull*, 527 N.W.2d 402, 404-05 (Iowa Ct. App. 1994).

Therefore, because under the terms of the parties' agreement Halstead needed to have the project completed by the time of homecoming that year for Upper Iowa University, which was from September 23 to 29, 2012, he cannot show his failure to complete the project was due to the fact he was discharged a day earlier, on September 22, 2012. We conclude Halstead has not shown he comes within the exception to the requirement to show he substantially

---

[1] As indicated above, the university released the grant money in October 2012, even though the work was not yet completed.

performed under the contract in order to enforce his mechanic's lien. Furthermore, he has not shown he substantially performed under the contract. Accordingly, we affirm the district court's determination he cannot enforce his mechanic's lien.

### III. Payment for Work

Although Halstead cannot enforce his mechanic's lien, this does not mean he should not be paid for his work on the project. "A construction contractor who fails to perform substantially under the contract can recover at most only in quantum meruit for the value of the work." *Lewis Elec. Co. v. Miller*, 791 N.W.2d 691, 695 (Iowa 2010). A contractor's recovery is based upon the unpaid contract price, minus the cost of completing any unfinished work and remedying any defective work, plus any other damages suffered by the owner, not to exceed the benefit received by the owner. *Id.* A contractor must present sufficient evidence to support a claim. *McDonald v. Welch*, 176 N.W.2d 846, 849 (Iowa 1970).

In Halstead's bill of September 28, 2012, he states the total price for the project would have been $20,000. He had already been paid $5000 and set forth specifics to show there was $5000 worth of work not completed.[2] For the remaining $10,000, he asserts he performed the work but had not been paid. The bill specifies the $10,000 represents the completed work of solid tuck-pointing of the front wall, partial painting of windowsills and stone on the front

---

[2] The contract had provided that the total cost would be between $15,000 and $20,000. The bill notes the work not completed included painting and waterproofing, fixing the window jam on the side wall, completing the back wall brick and joint repair, cleaning up, and miscellaneous finish repair, giving a cost for these items of $5000. Halstead did not request payment for the items that had not been completed.

wall, patching of stone on the front wall, repair work and tuck-pointing on the side wall, and miscellaneous stone repair. Halstead also submitted an exhibit more specifically laying out the materials used in the project, the cost of each of those materials, and his hours of labor performed on the project. We conclude Halstead should be paid for the work he performed on the project, subject to adjustment as set forth below.

### III.     Counterclaim

On the Langels' counterclaim for breach of contract, the district court determined Halstead should be responsible to pay the amount of $8950 found in Pattison's estimate "to complete and fix problems" in Halstead's work. The court did not order that Halstead be paid for any materials he supplied or labor he performed. The Langels previously paid Halstead $5000. The district court ordered that Halstead was denied further payment but was required to pay to the Langels $8950. The net result of the district court's ruling is that if Halstead were to pay the Langels the $8950 judgment, which presumably would pay Pattison for his work, Halstead would have a negative net recovery of $4950 for his work and materials; and the Langels would have a net out-of-pocket cost of only $5000 for the work which was originally estimated to cost them $15,000 to $20,000.

The amount due on a contract may be reduced by the cost of completing any unfinished work and remedying the defective work. *Lewis Elec.*, 791 N.W.2d at 695. In a claim of defective construction, damages may include diminution in value, cost of construction, and completion in accordance with the contract or loss of rentals. *Bidwell v. Midwest Solariums, Inc.*, 543 N.W.2d 293, 296 (Iowa

Ct. App. 1995). The recovery of a contractor is decreased by the cost of remedying those defects for which he is responsible. *See Moore's Builder & Contractor, Inc. v. Hoffman*, 409 N.W.2d 191, 195 (Iowa Ct. App. 1987).

Missing from the district court's ruling is the amount of recovery to which Halstead would be entitled but for any reduction for defects. While there was ample evidence concerning problems with Halstead's work on the building, the only evidence as to a dollar amount associated with the defects and omissions came from the bid submitted by Pattison to complete the project and fix the problems. The bid does not differentiate between what needed to be fixed due to poor workmanship by Halstead and what still needed to be completed that had been part of the original written contract between Halstead and Cathy, and had not already been completed by Pattison in September 2012. The bid provides:

> 1. Site should have been cleaned up daily, mortar all over sidewalks in stone water table. Work area not protected.
> 2. Timeframe. Way too much time involved for completing of the job.
> 3. Multiple brick should have been replaced on east wall (wall is not finished, and is supposed to be complete).
> 4. Southwest corner of building is tailing out (should be straight for a corner that was replaced).
> 5. Door that was in-filled with block has a poor bond with mortar. They should have been brought up to bottom of beam for support.
> 6. Overall the job does not look like a very experienced (or licensed?) contractor's work.
> 7. Original price from contractor was way over priced for that building.

If Halstead were claiming damages for the entire contract price, the cost of completing the contract may be included in the landowner's damages. In this case, however, for items that Halstead should have completed under the

contract, but were not accomplished because he was discharged before he could complete them and he did not request payment for these items, he should not be responsible to pay the costs of completing the project. The third item in Pattison's estimate is: "Multiple brick should have been replaced on east wall (wall is not finished, and is supposed to be complete)." Halstead also claimed one of the items, having to do with the foundation of the building, was outside his original bid. We are unable to determine what the cost for these items are out of Pattison's total bid amount of $8950.

We agree with the district court's conclusion Halstead should be responsible to pay damages for the cost of remedying any defective work. The record is unclear, however, as to what this amount should be. Out of Pattison's total bid of $8950, Halstead should only be responsible to pay the amount necessary to correct his defective work, and should not be responsible to pay for completion of the project. Cathy's damages for defective work should be offset against the award to Halstead for materials supplied and labor performed on the project.

## IV. Conclusion

In summary: Halstead is entitled to compensation for materials supplied and labor performed but for which he has not yet been paid; and Langels are entitled to an award for the cost necessary to correct Halstead's defective work.

We affirm the denial of foreclosure and enforcement of Halstead's mechanic's lien. We reverse the decision of the district court that denied Halstead any recovery for work performed but for which he had not been paid,

and remand for such a determination.  We also reverse the district court's award of money damages awarded to the Langels on the counterclaim in the amount of $8950, and remand for a further hearing to determine the amount of the $8950 bid that is limited to correction of defective work.  Costs are assessed forty percent to Halstead and sixty percent to Langels.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**.