# IN THE COURT OF APPEALS OF IOWA

No. 13-1746
Filed December 24, 2014

**JACK EHERENMAN d/b/a EHERENMAN CONSTRUCTION,**
    Plaintiff-Appellee,

**vs.**

**JOHN M. WARREN and SANDRA L. WARREN,**
    Defendants-Appellants.
_____

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

Homeowners appeal several aspects of a district court ruling foreclosing a mechanic's lien. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Bradley M. Strouse and Bruce L. Gettman Jr. of Redfern, Mason, Larsen & Moore, P.L.C., Cedar Falls, for appellants.

Paul W. Demro and Patrick C. Galles of Correll, Sheerer, Benson, Engels, Galles & Demro, P.L.C., Cedar Falls, for appellee.

Heard by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VAITHESWARAN, J.**

Homeowners appeal several aspects of a district court ruling foreclosing a mechanic's lien.

## I. Background Facts and Proceedings

John and Sandra Warren contracted with Jack Eherenman of Eherenman Construction to substantially remodel a Waterloo home for their daughter and son-in-law. The original contract price was $114,830. The contract was later amended to provide that any "substantial changes to material or labor" would be made by written change orders "signed and billed" biweekly and performed on a "material plus labor" basis.

Eherenman prepared one change order to accommodate revisions John wished to make. John signed certain paragraphs of the document but not others. As the project progressed, the Warrens and their daughter and son-in-law asked Eherenman to implement changes contained in the signed and unsigned portions of the change order as well as changes not memorialized in any change order.

In time, a conflict arose concerning what work was encompassed within the original contract and what work was not. The Warrens stopped paying Eherenman.

Eherenman filed a mechanic's lien for $66,781.42 plus interest and followed it with a petition to foreclose the mechanic's lien. After trial, the district court entered judgment for Eherenman in the amount of $45,945 and dismissed the Warrens' counterclaim for breach of contract. The Warrens appealed.

## II. Analysis

The Warrens contend: (A) Eherenman's mechanic's lien was not timely filed, (B) Eherenman failed to substantially perform the contract, (C) their contract

did not provide for extra work unless authorized by change order, and (D) even if Eherenman can recover, the district court incorrectly computed damages.

### A.    Timeliness of Filing

The Warrens claim Eherenman could enforce his mechanic's lien only if it was filed within ninety days of his last work.  *See* Iowa Code §§ 572.8-11 (2013); *Carson v. Roediger*, 513 N.W.2d 713, 715 (Iowa 1994).  They assert Eherenman performed his last work more than ninety days before the filing.  The district court found otherwise.  The court's finding is supported by Eherenman's testimony.  He stated he "[c]lean[ed] up tools" more than ninety days before filing the lien so he "could go to other jobs" pending clarification of what needed to be completed on the Warrens' project.  However, he had his crew return to the dwelling within ninety days to "start the insulation."  Because he performed work within ninety days of the filing, we affirm the district court's denial of the Warrens' timeliness objection.

### B.    Substantial Performance

To enforce a mechanic's lien, a contractor must substantially perform the work.  *Flynn Builders, L.C. v. Lande*, 814 N.W.2d 542, 545-46 (Iowa 2012).  "In all contracts, however, 'there is an implied term that the person for whom the work is contracted to be done will not obstruct, hinder or delay the contractor, but, on the contrary, will in all ways facilitate the performance of the work to be done.'"  *Sheer Constr., Inc. v. W. Hodgman & Sons, Inc.*, 326 N.W.2d 328, 332 (Iowa 1982) (citation omitted).

The Warrens contend Eherenman did not substantially perform the contract.  Eherenman essentially concedes this point but invokes the hindrance

exception to the doctrine. He contends the Warrens and their daughter and son-in-law "hindered the project and greatly slowed the progress of the work."

The district court agreed with Eherenman, finding the Warrens did not "pay[] for work performed per the contract and [did] not allow[] Eherenman Construction to complete performance." On our de novo review, we find support for these findings. *See Flynn Builders*, 814 N.W.2d at 545 (setting forth the scope of review). According to Eherenman, John Warren became concerned about the cost of the project and curtailed payments to him. Eherenman stated, "[T]here wasn't a problem until John told me that he was not going to pay me or the subs, that we were all too high. At that time obviously, I knew there was going to be a problem." When Warren stopped making payments, a number of items had yet to be completed. Eherenman documented the incomplete work and deducted $12,349.40 from his claim, adding an additional $1000 to the deduction at a later date. There is no question Eherenman was on track to complete the work but for John Warren's decision to halt the project. We conclude the hindrance exception to the substantial performance doctrine applied to excuse Eherenman's fulfillment of the contract. *See id.* at 547-48 (remanding for determination of "whether lack of specific performance might be excused by the conduct of the [home purchaser]").

### C. Extra Work by Change Order

The Warrens next contend Eherenman's recovery was limited to additional work authorized in the signed portions of the single written change order. Eherenman counters that the change order requirement was never followed. As this issue affects the amount of the damage award, we will address it.

"Generally, a builder may recover for extra work performed on a construction project when ordered and agreed to by the parties and not covered by the building contract." *Serv. Unlimited, Inc. v. Elder*, 542 N.W.2d 855, 857 (Iowa Ct. App. 1995). Although a contract may require written change orders, this requirement may be waived by the parties. *Cent. Iowa Grading, Inc. v. UDE Corp.*, 392 N.W.2d 857, 860 (Iowa Ct. App. 1986).

The district court essentially found a waiver. According to the court, Eherenman received verbal directions from all members of the family. The court characterized these directions as work order changes, "which caused Eherenman Construction, on occasions, to tear out existing work and re-do that same work solely to comply with a new work directive received from one or more of [them.]" The court determined Eherenman was more credible than the Warrens on this issue. We give weight to this credibility finding because "the trial court is in a more advantageous position than we to put credence where it belongs." *Flynn Builders*, 814 N.W.2d at 545. This is particularly true where the court's findings are supported by extensive record evidence.

Eherenman testified he discussed changes with the family by phone and e-mail. Verbal or unsigned change orders were paid "about half a dozen" times, "at least." Eherenman cited an unsigned order to remove the fireplace, which was billed and paid by Sandra Warren. According to him, billings were submitted to the Warrens "[p]robably every week or two, maybe three weeks, . . . certain invoices would come as the draws were needed, so as we would get things done." With respect to change orders, Eherenman testified "if that work would be completed, then I would invoice out for that." Because the Warrens waived the right to have all changes approved by written change order, Eherenman was

entitled to compensation for work performed outside the four corners of the contract or the signed paragraphs of the written change order.

### D. Damages Calculation

The district court calculated damages as follows:

| $162,757.26<br>-116,013.97<br>_____<br>$46,743.29 | • Billed for contracted work performed and extras<br>• Total paid by the Warrens<br><br>• Due and owing on contract work performed and extras |
|---|---|
| $22,829.32<br>-13,359.40<br>_____<br>$9,469.92<br><br>+1,181.67<br>+1,097.53<br>+1,973.50<br>_____<br>$60,465.91 –<br>Total Damages | • Which would have been billed on the $114,830 contract work if breach had not occurred<br>• Projected cost of performance<br><br>• Lost profits<br><br>• 10% general contractor services for plumbing subcontract<br>• 10% general contractor services for HVAC subcontract<br>• 10% general contractor services for electrical subcontract |
| - $3,608.60<br>- $5,789.91<br>- $5,126.50<br>_____<br>$14,525.01 | • Plumbing retained money<br>• HVAC retained money<br>• Electrical retained money |
| $45,940.90<br>Net Damages | |

The Warrens raise several challenges to this calculation. They contend the court (1) improperly included "lost profits for work Eherenman indisputably did not perform," (2) double-charged for roof work, (3) double-counted a ten-percent surcharge, and (4) improperly calculated a charge for electrical subcontract work.

We begin with the award for lost profits. The court concluded $46,743.29 was due and owing on the contract, plus extras. The court then added $22,829.32, which Eherenman asserted was the remainder of the contract to be invoiced. The court next subtracted "$13,359.40 for the "[p]rojected cost of

performance." The difference of $9,469.92 was characterized as "lost profits" and was awarded as damages to Eherenman.[1]

Iowa Code section 572.2(1) entitles a contractor to a lien "to secure payment for the material or labor furnished or labor performed." Eherenman did not furnish materials or perform labor for work totaling $22,829.32. He could not recover the cost of materials, labor, or profits for the yet-to-be-performed work. Accordingly, we reduce the damage award by $9,469.92.

The Warrens next contend Eherenman double-charged for roof work. He points to a $10,000 invoice for "rough in for roof" and a later $7000 invoice for "[r]oof rough-in portion of contract." While the two invoices appear duplicative at first blush, the original contract included three separate paragraphs relating to roof work. Given the differing amounts in the two invoices, it is reasonable to conclude the first invoice related to the first paragraph and the second invoice related to one of the other two paragraphs. Accordingly, we decline to reduce the damages by $7000, as the Warrens request.

This brings us to the claimed double-counting of the ten percent general contractor surcharge on the work of plumbing, heating, and electrical subcontractors. Those surcharges were $1181.67, $1097.53, and $1973.50, for a total surcharge of $4252.70.

Eherenman conceded the Warrens were entitled to credits for amounts he retained for plumbing, heating, and electrical work. He calculated the credits by subtracting the surcharges—the ten percent profit and overhead the Warrens acknowledged he should receive—from the sums he had retained. The resulting

---

[1] Eherenman contended the figure represented "deductions for work not yet completed, *including profit*." (Emphasis added). If that were the case, the deduction should have equaled the remainder of the contract to be invoiced—$22,829.32.

credits totaled $3608.60, $5789.91, and $5126.50 respectively. The district court applied these credits in favor of the Warrens. Because the credits already factored in the surcharges the Warrens owed Eherenman on the three subcontractor accounts, the surcharges should not have been added to Eherenman's damages as separate line items. Accordingly, we reduce Eherenman's damage award by the "10% general contractor services" surcharges (totaling $4252.70).

Finally, we address the Warrens' separate assertion concerning the electrical surcharge because it could affect the amount of the electrical credit the Warrens received. The Warrens agree Eherenman was entitled to a ten-percent surcharge for dealing with this subcontractor but contend the district court improperly calculated the surcharge amount. In their view, the proper sum is $1000 rather than $1973 because the electrical subcontractor was paid $10,000 in full satisfaction of his claims.

Although John Warren testified the electrical subcontractor accepted $10,000 as payment in full, Eherenman explained he received invoices from this subcontractor totaling $19,735 and he was entitled to ten percent of this sum ($1973) as a surcharge for profit and overhead. In calculating the electrical credit owed to the Warrens, the court reasonably applied ten percent of the invoiced sum ($1973) rather than ten percent of the sum paid to the subcontractor ($1000). We decline to increase the credit for electrical work by $973.50, as the Warrens request.

### III.    Disposition

We conclude the Warrens hindered performance of the contract, which excused Eherenman's obligation to substantially perform the contract. We

further conclude Eherenman was entitled to payment for work performed on the contract and the signed portions of the written change order as well as work performed pursuant to verbal change orders. Finally, we conclude the damage award of $45,940.90 must be reduced by the lost profits of $9469.92 and the surcharges of $1181.67, $1097.53, and $1973.50, resulting in a total reduction of $13,722.62. We affirm the ruling foreclosing the mechanic's lien, but reverse the judgment in rem of $45,945.90, and remand for entry of a judgment in rem in the amount of $32,218.28.

Costs on appeal are assessed equally to each party.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**