# IN THE COURT OF APPEALS OF IOWA

No. 24-0091
Filed April 9, 2025

**SUMMERS' ENTERPRISE, INC.,**
     Plaintiff-Appellee/Cross-Appellant,

**vs.**

**HUDSON LAND DEVELOPMENT, LLC,**
     Defendant-Appellant/Cross-Appellee,

**and**

**ARTESIAN EARTHWORKS, LLC,**
     Defendant.
_____

     Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer,

Judge.

     A land developer appeals the district court's judgment foreclosing a

mechanic's lien. **AFFIRMED ON APPEAL AND CROSS-APPEAL; REMANDED**

**WITH INSTRUCTIONS.**


     Gregory G.T. Ervanian and Joseph Cacciatore of Ervanian & Cacciatore,

LLP, Des Moines, for appellant/cross-appellee.

     Todd J. Locher of Locher & Davis PLC, Farley, for appellee/cross-appellant.


     Considered without oral argument by Tabor, C.J., Sandy, J., and Vogel,

S.J.*

     *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**TABOR, Chief Judge.**

Summers' Enterprise, Inc., (Summers) sued Hudson Land Development, LLC, (Hudson) and Artesian Earthworks, LLC, (Artesian) to foreclose a mechanic's lien against real estate that Hudson owned. The district court entered judgment for Summers. Hudson appeals,[1] raising three claims: (1) Summers and Artesian did not enter an oral contract; (2) Iowa Code section 572.11 (2020) bars the mechanic's lien against Hudson; and (3) all sums to which Artesian was entitled under its contract with Hudson were paid before Summers filed its mechanic's lien. On cross-appeal, Summers claims it has a right to interest on the judgment at a rate of two percent per month. Summers also seeks appellate attorney fees.

On the first claim, we decline to reach the merits because Hudson failed to preserve error. On Hudson's remaining claims, we reach the same conclusions as the district court. Thus, we affirm the judgment foreclosing the mechanic's lien. We also deny Summers's cross-appeal claim. Finally, we remand for the district court to order Hudson to pay Summers's reasonable appellate attorney fees.

## I.     Facts and Prior Proceedings

*The project.* Hudson hired Artesian as its general contractor for a real estate project on land Hudson owned in Black Hawk County. Hudson was developing a residential subdivision called Twin Oaks First Addition. Under its agreement with Hudson, Artesian was "responsible for the grading; the roadwork; the underground utility work, which included water, sewer, and storm sewer; and lining up anybody that it took to complete that work."

---

[1] Artesian did not appeal.

*The players.*  Brent Dahlstrom was the president of Hudson and a member of Artesian.  Adam Traetow was a member and manager of Artesian.  Todd Summers and his wife were the sole shareholders of Summers' Enterprise.[2]

*The project's progression.*  In 2018, Traetow—on behalf of Artesian—asked Summers for his company's help with the Twin Oaks project.[3]  Summers agreed, and his company spent about three weeks on the project site stripping and stockpiling topsoil.  When his company left the Twin Oaks site to work on a different project, Summers agreed to leave equipment behind for Artesian's use.  Traetow testified that Artesian "needed the equipment to try and get things graded before the end of the year, so [Summers] agreed to rent us the equipment."  According to Traetow, Summers "was okay with [Artesian] using it and was just gonna bill us when the year was over."  Summers also supplied fuel for Artesian to use for its work on the Twin Oaks project.

In November 2018, Traetow informed Summers that Artesian was done using the equipment.  Summers sent Artesian an invoice dated July 22, 2019, billing for the equipment rental, repairs to one piece of equipment, and the fuel.  The invoice included no charges for the topsoil stripping that Summers performed at the site.  The balance due was $264,941.46.  The invoice stated that payment was due on receipt and that "ACCOUNTS NOT PAID WITHIN 30 DAYS OF THE DATE OF THIS INVOICE ARE SUBJECT TO A FINANCE CHARGE EQUAL TO 2% PER MONTH."

---

[2] For ease of reference, we will use Summers as shorthand for the company.

[3] Summers had worked with Artesian on three other projects before the Twin Oaks development.

Traetow acknowledged that Artesian received the invoice and that Summers provided the equipment listed for Artesian's work on the Twin Oaks project. Traetow did not dispute the charges on the invoice.[4] But he explained that the invoice went unpaid because when Artesian received it, "we were on the tail end of things and had no money."[5]

*The legal proceedings.* Summers posted a mechanic's lien to the Iowa Mechanic's Notice and Lien Registry on September 17, 2020. The lien named Hudson as the property owner and included legal descriptions of the Twin Oaks subdivision. The lien stated that Summers furnished materials or labor for the property from June 28, 2018, through November 14, 2018, and that Summers was owed $264,941.46. The filing also included invoice copies attached as exhibits.[6] The sheriff served Hudson with the mechanic's lien notice on October 6, 2020.

In February 2021, Summers petitioned to foreclose the mechanic's lien. The action proceeded to bench trial in February 2023.[7] The district court heard testimony from Summers, Traetow, and Dahlstrom. The court also admitted over 400 pages of exhibits and considered the parties' trial briefs and joint stipulation of material facts. The court concluded that Summers "proved that it was a

---

[4] Counsel for Hudson stipulated on the record at trial that "all of the rentals identified . . . in this invoice represent[] . . . fair, reasonable rental rates."

[5] Artesian ended its involvement on the Twin Oaks project in December 2019. By June 2020, Artesian had shut down its operations and was winding up its financial affairs.

[6] Traetow signed an affidavit stating: "The amount due to Summers' Enterprise, Inc. for the equipment that it furnished for use by Artesian Earthworks, LLC on the Project is accurately reflected on the invoice and supporting receipts shown in the Mechanic's Lien filed by Summers' Enterprise, Inc. on September 17, 2020."

[7] The court entered default judgment against Artesian in May 2022 for failing to answer the petition. Artesian then filed an answer in July 2022. Hudson and Artesian both appeared at trial.

subcontractor[8] . . . and had a contract with the general contractor,[9] Artesian"; that Summers "fully performed its agreement with Artesian to furnish material or labor for the improvement and development of land owned by Hudson"; and that Summers was entitled to foreclose the mechanic's lien against Hudson's property. The court thus entered judgment for Summers in the amount of $264,941.46 plus interest at a rate of two percent annually from August 21, 2019; for attorney fees of $23,699.00; and for costs.

Hudson appeals.

## II.    Analysis

"Actions to enforce mechanic's liens are in equity," so our review is de novo. *Flynn Builders, L.C. v. Lande*, 814 N.W.2d 542, 545 (Iowa 2012).  We give weight to the district court's findings of fact but are not bound by them.  *Id.*

Mechanic's liens "are purely a creature of statute."  *Id.*; *see generally* Iowa Code ch. 572.  Their purpose is "to protect 'persons who have supplied labor or material for the construction, improvement, or repair of a building or other structure by giving the lienholders security independent of their contractual remedies against the owner of the property, if any.'"  *Flynn Builders*, 814 N.W.2d at 545 (citation omitted).  We construe mechanic's lien statutes liberally to promote that purpose.  *See id.*

---

[8] A subcontractor "includes every person furnishing material or performing labor upon any building, erection, or other improvement, except those having contracts directly with the owner."  Iowa Code § 572.1(11).
[9] A general contractor "includes every person who does work or furnishes materials by contract, express or implied, with an owner."  *Id.* § 572.1(3).

### A. Oral Contract—Error Preservation

Hudson first argues that no oral contract existed between Summers and Artesian. The trouble is, Hudson never made that argument in the district court.[10] In the error-preservation section of its appellant's brief, Hudson cites the district court's conclusion that Summers "proved that it was a subcontractor . . . and had a contract with the general contractor, Artesian."[11] But that passage does not show error preservation. Issues must be raised and decided by the district court before they may be appealed. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

Not only did Hudson not contest the existence of an oral contract between Summers and Artesian in the district court—its arguments there assumed a contract *did* exist. Hudson now decries "a stark lack of evidence in this record to support a finding that an enforceable oral contract existed between Summers and Artesian." But Hudson asserted in its trial briefing that "Summers entered into an oral agreement with Artesian, as the general contractor to Hudson," and that "Summers' sole contractual relationship was with Artesian."[12] What's more, the only ground Hudson asserted in its motion for directed verdict was that "there's been no testimony that defines the property which is now the subject of

---

[10] Although Summers does not contest error preservation, we may do so on our own motion. *See Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000).

[11] Hudson cites Iowa Rule of Civil Procedure 1.904(1) for the proposition that it preserved error because "[a]ppeal was timely filed challenging the sufficiency of the evidence to sustain findings, with or without having objected to same by motion or otherwise."

[12] Traetow's affidavit—which the district court cited in denying Hudson's motion for summary judgment—stated that "Artesian Earthworks, LLC entered into an oral contract with Summers' Enterprise, Inc. for Summers' Enterprise, Inc. to furnish equipment for use by Artesian Earthworks, LLC on the Project."

Mr. Summers' lien." Hudson waived closing argument. And Hudson did not move for new trial nor to reconsider, enlarge, or amend before filing its notice of appeal. *See* Iowa Rs. Civ. P. 1.1004(6), 1.904(2).

Because Hudson now raises a different issue than it raised in the district court, it failed to preserve error on its claim that Summers and Artesian did not enter an oral contract. *See State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999) ("Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court."). We decline to reach the merits of this claim.

### B. Enforceability of Mechanic's Lien

Assuming that Summers was entitled to the mechanic's lien,[13] we turn to the merits of Hudson's remaining claims challenging the lien's enforceability.[14] Hudson argues that it is unenforceable under Iowa Code section 572.11, which provides that a mechanic's lien "perfected under section 572.10 shall be enforced against the property . . . only to the extent of the balance due from the owner to the general contractor . . . at the time of the service of such notice." Hudson contends that when it received notice on October 6, 2020, "there was no money

---

[13] "A person who furnishes any material or labor for improvements to building or land is generally entitled to a lien to secure payment for the labor and materials furnished." *Griess & Ginder Drywall, Inc. v. Moran*, 561 N.W.2d 815, 816 (Iowa 1997); *see* Iowa Code § 572.2 (describing who is entitled to a mechanic's lien).

[14] Hudson again fails to identify "the places in the record where the issue[s] [were] raised and decided in the district court" in the second and third error-preservation sections of its appellant's brief. *See* Iowa R. App. P. 6.903(2)(a)(8)(1). But we find that error was preserved because Hudson raised its remaining claims in its trial briefing and the district court ruled on those claims.

owed from the property owner (Hudson) to the general contractor (Artesian).  Thus, the mechanic's lien claim of Summers is barred."

Hudson further contends that "Iowa Code section 572.14 provides validation that application of Iowa Code section 572.11 extinguishes Summers' right to foreclosure of its lien in the circumstances of this case."  That section states:

> [P]ayment to the general contractor or owner-builder of any part or all of the contract price of the building or improvement within ninety days after the date on which the last of the materials was furnished or the last of the labor was performed by a subcontractor, does not relieve the owner from liability to the subcontractor for the full value of any material furnished or labor performed upon the building, land, or improvement *if* the subcontractor posts a lien within ninety days after the date on which the last of the materials was furnished or the last of the labor was performed.

Iowa Code § 572.14 (emphasis added).  Hudson asserts that Artesian "had been fully paid as of the date on which Summers posted its lien to the registry," and "Summers' lien was not posted within 90 days after the date on which it last provided materials or labor."  From there, Hudson urges that "Summers does not have a valid enforceable mechanic's lien."

Beyond that, Hudson argues that the mechanic's lien is unenforceable under section 572.16, which provides:

> Nothing in this chapter shall be construed to require the owner to pay a greater amount or at an earlier date than is provided in the owner's contract with the general contractor, unless the owner pays a part or all of the contract price to the general contractor before the expiration of the ninety days allowed by law for the posting of a mechanic's lien by a subcontractor. . . .

Hudson alleges that "Artesian's failure to pay subcontractors and suppliers it utilized for Hudson's Project resulted in Hudson paying approximately $975,114.60

*in excess of* the amounts set forth in the estimates for [the Twin Oaks project] created by Artesian, provided to Hudson, and accepted by Hudson." And Hudson claims that "Artesian's contract had been paid in full by Hudson as of January 27th, 2020." [15]  Thus, according to Hudson, the general contractor had been paid in full by the owner about nine months before it received notice of the mechanic's lien.

To counter, Summers insists the district court correctly found that Hudson still owed Artesian a minimum of $380,793.56 on October 6, 2020. Thus, Artesian's $264,941.46 debt owed to Summers—reflected in the mechanic's lien— is less than what Hudson owed Artesian when Summers perfected the lien, so Summers could recover the full amount of the lien from Hudson. We agree.

True, we are not bound by the district court's fact findings. *Flynn Builders*, 814 N.W.2d at 545. But we give them weight. *Id.* And because mechanic's lien cases involve "numerous charges and counter charges which depend entirely on the credibility of the parties, . . . the trial court is in a more advantageous position than we to put credence where it belongs." *McDonald v. Welch*, 176 N.W.2d 846, 849 (Iowa 1970).

The district court found that there "was never a 'hard number', budget limit, or final contract price agreed upon between Hudson Land Development and Artesian for Artesian's work on the [Twin Oaks] property." The court also found:

> On October 6, 2020, Hudson Land Development still owed Artesian at least $22,310.24 (as shown in Invoice #1152 dated September 25,

---

[15] The source of this assertion is unclear. To support this claim, Hudson cites a page of its trial brief that doesn't mention payments Hudson made to Artesian. In support of its motion for summary judgment, Hudson filed an affidavit from Dahlstrom stating that "Hudson agreed to pay Artesian the amount of $1,811,053.10," and that "[b]etween May 8th, 2018, and January 27th, 2020, Hudson paid Artesian the sum of $2,059,548.60."

2018 from Artesian to Hudson Land Development) plus $358,483.32 (as shown in Invoice #1156 dated December 25, 2018 from Artesian to Hudson Land Development) for work performed by Artesian on the property in 2018 using material furnished by [Summers].

And in ruling for Summers, the court made these credibility findings:

The court does not find Dahlstrom's testimony and Hudson Land Development's claims that no balance, or a balance less than the amount claimed by [Summers], was due from Hudson Land Development to Artesian at the time of the service of the notice of the lien to be credible. Finding the testimony of Todd Summers and Adam Traetow to be credible, and the more reliable evidence, the court is convinced that when service of the notice of [Summers's] lien occurred, Hudson Land Development still owed Artesian at least $380,793.56.

Traetow's testimony and the exhibits admitted at trial support these findings.

Traetow testified that Artesian prepared a "quote" for the Twin Oaks project in January 2018 that included "some rough numbers just to try to scope out . . . what it was gonna cost." Traetow added that there "was nothing signed or contracted" in advance for the work Artesian completed on the project in 2018, and Artesian issued "invoices for work as it progressed." According to Traetow, Artesian submitted an updated "strong estimate" for the project to Hudson in January 2019 after it had completed a portion of the project. The exhibits filed by Hudson included the 2018 "quote" and the 2019 "estimate" prepared by Artesian. But neither of those documents was signed as "accepted" by Hudson. And the exhibits filed by Summers included the unpaid invoices from Artesian to Hudson referenced by the district court.

After carefully reviewing the record and giving appropriate weight to the district court's fact findings, we reach the same conclusion as that court. The record shows that Hudson and Artesian did not agree on a fixed price for Artesian's

work on the Twin Oaks project.  The record also establishes that when Hudson received notice of the mechanic's lien on October 6, 2020, Hudson owed Artesian at least $380,793.56 for work Artesian performed on the Twin Oaks property in 2018 using the equipment and fuel provided by Summers.  Because the $264,941.46 sum owed to Summers to satisfy its mechanic's lien is less than the balance due from Hudson to Artesian when Summers perfected its lien, the lien is not barred by sections 572.11, 572.14, or 572.16.  Thus, we affirm the district court's judgment foreclosing the mechanic's lien.

### C. Cross-Appeal

On cross-appeal, Summers argues that it has a right to interest upon the judgment at a rate of two percent per month.  As mentioned above, the invoice from Summers to Artesian dated July 22, 2019—which was the subject of the mechanic's lien—stated that payment was due on receipt and that "ACCOUNTS NOT PAID WITHIN 30 DAYS OF THE DATE OF THIS INVOICE ARE SUBJECT TO A FINANCE CHARGE EQUAL TO 2% PER MONTH."  The district court noted that the finance charge stated in the invoice was "two percent per month" in its findings of fact.  But the court ordered that Summers was entitled to judgment foreclosing its mechanic's lien "in the sum of $264,941.46, together with interest thereon at the rate of two percent (2%) per *annum* from August 21, 2019." (emphasis added).

Summers moved for an order nunc pro tunc and to enlarge asserting that it believed "the '2% per annum' language from the order was scrivener's error and was intended to be '2% per month from August 21, 2019.'"  The district court denied the motions, reasoning that Summers's "trial brief requested interest at a rate of

two percent per annum and stated [Summers] was entitled to interest at a rate of two percent per annum."[16]

Summers now claims that its counsel "committed a scrivener's error" in preparing its trial brief. As Summers explains the mistake, counsel correctly quoted the invoice terms that the finance charge was two percent per month. But counsel erred in drafting the section heading and conclusion of the brief, defining the interest rate at "two percent per annum." Summers alleges that the errors in its trial brief "lead to a similar error in the Judgment and Decree issued by the trial court." It insists that "the trial court's decision to award interest at a rate of two percent per annum instead of interest at a rate of two percent per month was not a 'product of judicial reasoning and determination,'" and that "scrivener's error" should not defeat its right to collect interest under the terms of its invoice to Artesian.[17] As a remedy, Summers requests that we direct the district court to enter an order to correct the judgment entry by awarding interest upon the judgment at a rate of two percent *per month* from August 21, 2019.

A "scrivener's error" is a "clerical error." *See Error*, Black's Law Dictionary (12th ed. 2024). "An error is clerical in nature if it is not the product of judicial reasoning and determination." *State v. Hess*, 533 N.W.2d 525, 527 (Iowa 1995). "[W]hen the record unambiguously reflects that a clerical error has occurred, we

---

[16] In the same order, the court denied Hudson's motion for extension of time to respond to Summers's motions for order nunc pro tunc and to enlarge. Hudson did not respond to either motion before filing its notice of appeal.

[17] Relying on its unpreserved contract claim, Hudson responds that "there could not have been a meeting of the minds or an agreement that Summers' invoices would accrue interest at the rate of 24% per annum." And, according to Hudson, Summers's misstatement about the interest is irrelevant.

will direct the district court to enter a nunc pro tunc order to correct the judgment entry." *Id.* The purpose of a nunc pro tunc order is "to make the record show truthfully what judgment was actually rendered." *McVay v. Kenneth E. Montz Implement Co.*, 287 N.W.2d 149, 150 (Iowa 1980) (citation omitted).

Here, we cannot conclude that the district court's judgment awarding Summers "the sum of $264,941.46, together with interest thereon at the rate of two percent (2%) per annum from August 21, 2019," was a clerical error. In refusing to issue an order nunc pro tunc, the court correctly stated that Summers requested interest at a rate of two percent "per annum" in its trial brief. That statement reflected the court's reasoning for its judgment. And Summers acknowledges that its own briefing led the court to enter that judgment. "It is not the purpose of nunc pro tunc to correct a mistake or misunderstanding of litigants" or to correct "judicial thinking, a judicial conclusion or mistake of law." *Headley v. Headley*, 172 N.W.2d 104, 108 (Iowa 1969). We thus deny Summers's cross-appeal claim.

### D. Appellate Attorney Fees

Finally, Summers asks that we remand to the district court with instructions to award appellate attorney fees. *See* Iowa Code § 572.32 (allowing prevailing plaintiff to be awarded reasonable attorney fees). Section 572.32 allows the district court to award both trial and appellate attorney fees. *See Schaffer v. Frank Moyer Const., Inc.*, 628 N.W.2d 11, 23 (Iowa 2001). Because Summers prevailed at trial and on appeal, we grant its request. We remand for the district court to enter an

order requiring Hudson to pay Summers's appellate attorney fees in a reasonable amount to be determined by the court upon review of an attorney-fee affidavit.

**AFFIRMED ON APPEAL AND CROSS-APPEAL; REMANDED WITH INSTRUCTIONS.**